```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF MINNESOTA
                  09-CV-3148(JMR/AJB)
```

Doctor's Associates, Inc.         )
                                  )
        v.                        )        ORDER
                                  )
Subway.SY LLC and Hani Kotifani   )


On April 2, 2010, this Court granted plaintiff's motion for summary judgment, finding defendant liable for trademark infringement and cybersquatting. Plaintiff now seeks a permanent injunction, statutory damages, and attorney's fees and costs. Defendant opposes the motion. The motion is granted, in part.

I. <u>Background</u>

Plaintiff, Doctor's Associates, Inc., owns several trademarks associated with the well-known Subway sandwich restaurant chain. Subway restaurants are the largest single-brand restaurant chain in the world. The mark can be found on some 32,000 restaurants, as well as operations in Wal-Mart stores, and on military bases and college campuses.

Plaintiff first used its Subway mark on August 21, 1967. The Subway mark was registered on October 20, 1981. Beyond the original mark, plaintiff registered Subway Eat Fresh in 2002, and stylized versions of the Subway and Subway Eat Fresh marks in 2003 and 2007.

On August 29, 2008, defendant Hani Kotifani formed Subway.SY

LLC.[1]  Although defendant maintains he did not operate within the United States, the LLC was headquartered in Eden Prairie, Minnesota.  Defendant registered Subway.SY "Eat Healthy" with the Minnesota Secretary of State on January 15, 2009, and "for the assumed name Subway.SY" on March 9, 2010.  (Nikolai Decl. ¶ 3.)

Subway.SY's website and Facebook page continue to advertise the company.  The Subway.SY website initially displayed sandwich images directly copied and misappropriated from plaintiff's website.  It continues to display the Subway.SY name.  As of July 30, the Facebook site displayed the infringing mark, and exhorted visitors to "eat healthy."  The Facebook "wall" displayed a post reading, "Finally! A subway in Syria! I thought the day [would] never come!," and another, reading, "[F]aisal, is it gonna be the same one as in usa????!!"  The latter is evidence of the strength of the mark and the likelihood of confusion.

Subway.SY's promotional materials, arrayed before the Court, claimed Subway.SY began its business "way back when."  It trumpeted its "tremendous unparalleled success record – along with the proven experience of franchises." (Nikolai Decl. Ex. 10.)

On February 19, 2010, plaintiff sought summary judgment on its

---

[1] Plaintiff initially filed suit against both Hani Kotifani and Subway.SY LLC.  On February 8, 2010, the Honorable Arthur J. Boylan, United States Magistrate Judge, informed defendant Kotifani he could not proceed without counsel representing Subway.SY LLC.  On March 11, 2010, defendant Kotifani notified the Court he had dissolved the LLC, and was prepared to proceed without counsel.

claims of trademark infringement and unfair competition under sections 32 and 43(a) of the Lanham Act (Counts I & II); trademark dilution under 15 U.S.C. § 1125(c)(Count III); violation of the Anti-Cybersquatting Consumer Protection Act under 15 U.S.C. § 1125(d)(1)(Count IV); and cancellation of Minnesota Trademark Registration, pursuant to Minn. Stat. § 333.25 (Count V).

Notwithstanding defendant's expressed desire to oppose plaintiff's motion, he failed to properly file his opposition with the Court. On April 2, 2010, the Court held a hearing and granted plaintiff's motion.[2] The Court further granted plaintiff leave to seek additional relief.

On April 19, 2010, plaintiff filed this motion seeking a permanent injunction; statutory damages of $2 million under the Lanham Act; $100,000 in damages for defendant's website infringement; and $20,066.25 in attorney's fees and costs.

Defendant opposes the motion claiming plaintiff has not alleged any business loss, and his website "has been removed from publication."[3] Finally, he argues plaintiff's attorney's fees are unreasonable.

---

[2] Plaintiff did not ask the Court to rule on Count VI (violation of Minnesota Deceptive Trade Practices Act under Minn. Stat. § 325D.44); Count VII (dilution and injury to business reputation under Minn. Stat. § 333.285); or Count VIII (unfair competition). These claims remain outstanding.

[3] As of July 30, 2010, the Court could access the infringing website. Although most site content appears to have been deleted, the Subway.SY logo remains prominently displayed.

3

II. <u>Analysis</u>

    A. <u>Permanent Injunction</u>

Plaintiff asks the Court to permanently enjoin defendants from using its Subway marks. Specifically, plaintiff argues injunctive relief is necessary, because defendant continues to display his infringing website, and recently registered the name Subway.SY with the Minnesota Secretary of State. The Court agrees.

The Court may grant an injunction "to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office." 15 U.S.C. § 1116(a). To determine whether permanent injunctive relief is necessary, the Court balances: (1) the threat of irreparable harm to the moving party; (2) the balance of harm between this harm and the harm suffered by the nonmoving party if the Court grants an injunction; and (3) the public interest. <u>Taylor Corp. v. Four Seasons Greetings, LLC</u>, 403 F.3d 958, 967 (8th Cir. 2005). Analysis of these factors overwhelmingly favors entry of a permanent injunction.

Plaintiff is entitled to a presumption that defendant's continued infringement causes irreparable harm. In trademark infringement cases, "injury is presumed once a likelihood of confusion has been established." <u>Mut. Of Omaha Ins. Co. v. Novack</u>, 836 F.2d 397, 403 n.11 (8th Cir. 1987). On April 2, 2010, this Court concluded defendant's Subway.SY and Subway.SY Eat Healthy marks infringed on plaintiff's marks. Since then, defendant has

4

continued to maintain his Subway.SY website.  Defendant's most recent filing expresses his belief that he can use the Subway name in a "country where NO ONE knows SUBWAY." (Def.'s Reply 1.)  In the face of defendant's continued infringement, plaintiff demonstrates irreparable harm.

The balance of hardships further favors a permanent injunction. "There is no cognizable harm to defendant from being enjoined from doing something that is against the law and for which [he] has already been found liable." Capitol Records, Inc. v. Thomas-Rasset, 680 F. Supp. 2d 1045, 1060 (D. Minn. 2010).  Plaintiff, however, faces real harm from defendant's behavior, including brand dilution, and website confusion.

Finally, an injunction protects the public interest. "[T]he public has an interest in the enforcement of valid trademarks," as well as "the right not to be deceived or confused as a result of the infringement of established marks." Cmty. Of Christ Copyright Corp. v. Devon Park, 683 F. Supp. 2d 1006, 1018 (W.D. Mo. 2010). Defendant's behavior is precisely that which Congress sought to prevent - continuing infringement designed to mislead the public.

In the face of defendant's unrelenting efforts to use and derive benefit from plaintiff's trademarks, the Court concludes a permanent injunction is necessary to protect plaintiff from ongoing harm.

B. <u>Statutory Damages</u>

Plaintiff next seeks maximum statutory damages under both the Lanham and Anti-Cybersquatting Consumer Protection Acts.

1. <u>Lanham Act</u>

Under the Lanham Act, a plaintiff may elect statutory damages:

(C) Statutory damages for use of counterfeit marks.

In a case involving the use of a counterfeit mark (as defined by section 34(d)(15 U.S.C. 1116(d)) in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a), an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of –

(1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale or distributed, as the court considers just; or

(2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c).

Statutory damages are not only "restitution of profit and reparation for injury, but are also in the nature of a penalty, designed to discourage wrongful conduct." <u>Cass County Music Co. v. C.H.L.R., Inc.</u>, 88 F.3d 635, 643 (8th Cir. 1996)(internal quotations omitted). As a result, "[a] plaintiff can recover statutory damages even though it did not submit evidence regarding actual damages, such as lost profits." <u>Capitol Records, Inc.</u>, 680

6

F. Supp. 2d at 1051.

The statute "does not provide guidelines for courts to use in determining the appropriate award, and is only limited by what the court considers just." Tiffany Inc. v. Luban, 282 F. Supp. 2d 123, 124-25 (S.D.N.Y. 2003)(internal citations omitted). Here, plaintiff seeks $2 million, the statutory maximum, for defendant's infringement of its marks. Specifically, plaintiff argues defendant's bad faith intent to trade-off plaintiff's goodwill, coupled with defendant's continued infringement, warrants the maximum award.

Before assessing an enhanced damage award, the Court considers whether defendant acted willfully. An infringer acts "willfully" if he knows his conduct constitutes infringement. See RCA/Ariola Int'l. v. Thomas & Grayston Co., 845 F.2d 773, 779 (8th Cir. 1988)(applying the willfulness standard in a copyright case); see also Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283, 288 (2d Cir. 1999)(defining the standard for willfulness as "whether the defendant had knowledge that [his] conduct represented infringement or perhaps recklessly disregarded the possibility.").

Here, the Court found defendant had infringed, and told him so. Nonetheless, his infringing conduct continued. On March 9, 2010, in the midst of this lawsuit, defendant registered the name Subway.SY with the Minnesota Secretary of State. On April 2, 2010, the Court told defendant, in no uncertain terms, his actions

7

violated the law.  Defendant, however, continues to operate his website - despite directly representing to the Court that it "ha[d] been removed from publication." (Def.'s Reply 3.)  This is willful conduct.

Accordingly, the Court exercises its discretion, and awards statutory damages of $25,000.

### 2. Anti-Cybersquatting Act

"In a case involving a violation of [15 U.S.C. § 1125(d)(1)], the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits, an award of statutory damages in the amount of not less than $1,000 and not more than $100,000 per domain name as the court considers just."  15 U.S.C. § 1117(d).  Here, plaintiff seeks $100,000 in damages under the Anti-Cybersquatting Act, where defendant continues to maintain his infringing domain name registration and display plaintiff's mark.  Defendant argues that, because his website cannot divert consumers from plaintiff's website, there is no infringement.  The argument is specious. Where the Court has already ruled defendant's website violates the Anti-Cybersquatting Consumer Protection Act [Docket No. 24], defendant's arguments are inapposite.

Accordingly, the Court awards plaintiff the sum of $25,000 in accord with the Anti-Cybersquatting Consumer Protection Act.

C. <u>Attorney's Fees</u>

Finally, plaintiff requests $20,066.25 in attorney's fees and costs. Defendant complains the request "is not reasonable," and asks the Court to reconsider the amount. Where the record establishes defendant's bad faith, the Court grants plaintiff's entire fee request.

The Lanham Act authorizes "reasonable attorney fees to the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). "Courts have defined the characteristics of exceptional cases with adjectives suggesting egregious conduct by a party." <u>Aromatique, Inc. v. Gold Seal</u>, 28 F.3d 863, 877 (8th Cir. 1994); <u>see also Porous Media Corp. v. Pall Corp.</u>, 110 F.3d 1329, 1341 (8th Cir. 1997)(upholding attorney fee award where defendant's conduct was "deliberate and willful"). Here, the Court has found defendant intended to deceive the public through his website. His submarine sandwich venture intentionally ripped off the name and attempted to free-ride on the goodwill of the world's largest submarine sandwich shop. To this end, he directly copied pictures of products from plaintiff's website and lied in press materials. More troubling, defendant continues his attempts to mislead the public on his website and through Facebook. These facts constitute an exceptional case, and the Court proceeds accordingly.

Plaintiff uses the lodestar method to calculate attorney's fees and costs, and the Court finds plaintiff's calculation

9

reasonable.  See Games Workshop Ltd. v. Beal, 04-0013-CV-W-FJG, 2006 U.S. Dist. LEXIS 22525, at *10 (W.D. Mo. Apr. 21, 2006)(applying the lodestar method to calculate attorney fees pursuant to 15 U.S.C. § 1117(a)).  The Court awards $20,066.25 in attorney's fees and costs.

III. Conclusion

IT IS ORDERED that:

1.   Plaintiff's motion seeking a permanent injunction, statutory damages, and attorney's fees and costs is granted, in part [Docket No. 25].

2.   Plaintiff's request for a preliminary injunction is granted.  The Court enjoins defendant from:

> a.  Using the name or marks SUBWAY, SUBWAY EAT HEALTHY, SUBWAY EAT FRESH, SUBWAY.SY, SUBWAY.SY EAT HEALTHY, or any other confusingly similar mark.
>
> b.  Registering the name or marks SUBWAY, SUBWAY.SY, or SUBWAY.SY EAT HEALTHY with any state or authority.
>
> c.  Registering any domain name incorporating the SUBWAY marks.
>
> d.  Committing any act calculated or likely to cause the public to believe defendant or his goods or services are connected, licensed, sponsored, affiliated or associated with plaintiff, or from otherwise unfairly competing with plaintiff, including, but not limited to, publicly

identify defendant with the SUBWAY mark.

3. The Court awards statutory damages in the amount of $25,000 pursuant to 15 U.S.C. § 1117(c).

4. The Court awards statutory damages in the amount of $25,000 pursuant to 15 U.S.C. § 1117(d).

5. The Court grants plaintiff's request for attorney's fees and costs in the amount of $20,066.25.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  July 30, 2010

s/ James M. Rosenbaum
JAMES M. ROSENBAUM
United States District Judge